UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BACARDNEY GEORGE** | **CIVIL ACTION NO. 6:11-cv-0123** |
| **LA. DOC # 477439** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **SHERIFF LOUIS ACKAL AND** | |
| **DETECTIVE JEFFERY L. MATTHEWS** | **MAGISTRATE JUDGE HILL** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Bacardney George, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on January 3, 2011.[1] Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  Plaintiff is serving an 80 year sentence imposed by the Louisiana Sixteenth Judicial District Court for Iberia Parish, Louisiana, following plaintiff's conviction for attempted second degree murder and his adjudication as a second felony offender.  Plaintiff names Iberia Parish Sheriff Louis Ackal and Detective Jeffery L. Matthews; he claims Matthews used "illegal procedures" to obtain blood samples from plaintiff's automobile.  Plaintiff prays for damages of $1,000/hour from April 12, 2007 until such time as plaintiff is "released from this 2nd Degree Attempted Murder Conviction . . . ."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing

---

[1] The Complaint was filed in the United States District Court for the Middle District of Louisiana on January 13, 2011. Since venue was inappropriate in that court, the Complaint was transferred to this Court on January 25, 2011.

orders of the court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

## Background

Plaintiff was arrested and charged with attempted second degree murder on April 12, 2007.  In the course of the investigation, Detective Jeffery L. Matthews of the Iberia Parish Sheriff's Office obtained blood swabs from the concrete block that was identified as the assailant's weapon and blood swabs from material allegedly found in the plaintiff's automobile.[2]

---

[2] The facts surrounding petitioner's conviction were set forth by the Louisiana Third Circuit Court of Appeals as follows:

On April 12, 2007, retired prosecutor Ralph Lee was sitting in a swing in his back yard in New Iberia, drinking his morning coffee. Around 7:10 a.m., he heard a female voice coming from City Park, located adjacent to the back yard of his home, saying, "stop, you're killing me, stop, you're killing me." Lee stood up, turned around and saw a black male wearing a white t-shirt holding something over his head and forcefully smashing it to the ground. Lee went through a gate from his yard into a short street leading to the park and saw the man again raise something over his head and smash it to the ground. Lee heard a "splat," like "when you slap wet hamburger meat on a counter."

As Lee entered the park, he saw the man standing over what appeared to be a human, lying on the ground. The man had his hands on his knees and was looking at the person on the ground, "bending over looking at whatever he had done." When the chain link gate rattled, the man looked up and began walking toward an older model green Cadillac parked in the "tear drop" area of the park. The man looked directly at Lee once, and Lee was able to see his face "very well."

Lee was also able to plainly see the license plate on the car, OOU 586. Lee was unarmed, and, being a former assistant district attorney, understood the importance of being able to get away with the license plate information. No one else was in the park; Lee realized that "if [he] went down there was no witness left." The man got in the car and "drove off, very calmly, like nothing had happened."

When Lee went to the person on the ground, he found a black female, lying on her stomach, and "her head was an absolute mess." Lee thought she was dead. He jogged back to his house and called 911.

Deputy Jeff Credeur arrived at the park at 7:23 a.m. He found paramedics treating the woman and noted she had a severe head injury. Lee gave Deputy Credeur the car's license plate number, and Deputy Credeur had Deputy Brimm run the plate.

The 1999 green Cadillac was registered to the defendant, Bacardny George.

Detective Jeff Matthews located the green Cadillac at the defendant's workplace, Superior Inspection Services, about a twenty-minute drive from the park. The vehicle was placed in secure storage, and

2

Plaintiff alleges that Matthews "used illegal procedures by performing DNA blood swabs on a concrete block with the victim's blood on it located at New Iberia City Park . . ." and that Matthews testified at trial that he also "performed DNA blood swabs allegedly found in [plaintiff's] vehicle located at Marks Towing Secure Storage." However, plaintiff asserts that Matthews "never submitted the vehicle itself to the crime lab for DNA analysis he only submitted blood DNA cotton swabs which [were] performed by him that he sent to the crime lab for DNA analysis." Petitioner further

---

Detective Matthews tested areas in the vehicle for blood. The tests were positive.

Around the same time, Ralph Lee identified the defendant from a photo lineup as the person he had seen that morning in the park. At trial, Lee further identified the defendant as the man in the park and in the photo, although he believed the defendant was "a little lighter" in the courtroom than he had been at the time of the attack. Lee had no doubt that the defendant was the man he had seen that day in the park.

Meanwhile, Nicole Watkins was "bleeding very actively" in the emergency room of the Dauterive Hospital. Dr. Kevin Chamas, medical director and physician at the hospital, found seventy-five severe lacerations to Watkins' head. He considered her condition life-threatening without treatment, and described her injuries as "so extensive it was pretty difficult" to provide her the proper treatment. Watkins was responding only to pain when she arrived, unable to verbalize recognizable words. Dr. Chamas described her injuries as "facial edema over both eyes and then the right cheek, right lip and then large flap lacerations to her posterior scalp." The scalp lacerations "were extremely severe and deep and actually at first it was really difficult to realize how bad they were." As Dr. Chamas was repairing lacerations, he "just kept finding new lacerations and she had a total of about seventy-five (75) severe lacerations." Describing the lacerations, Dr. Chamas said "they were severe as I had ever seen."

A CAT scan showed Watkins had bleeding into the right frontal region of her brain. Her injuries were to both the front and back of her head. Because no neurosurgeon was available, Dr. Chamas repaired the extensive lacerations as quickly as he could and prepared Watkins for transfer to Lafayette General Hospital.

Dr. Chamas testified it was unusual for him to stay at a patient's bedside for more than an hour. He was at Watkins' bedside, providing "critical and extensive care," for more than two hours. He considered her injuries consistent with being struck in the head with large rocks. Forensic testimony at trial showed the presence of Watkins' blood on a concrete block that weighed seventeen pounds, twelve ounces; another concrete block found in the area with blood on it weighed eighteen pounds and nine ounces.

\* \* \*

The jury found the defendant guilty of attempted second degree murder on August 13, 2008. The next day, the state charged the defendant with being a second felony offender, based on his January 26, 2004 conviction for attempted possession with the intent to distribute cocaine. The trial judge adjudicated the defendant a second felony offender at proceedings on October 8, 2008, and sentenced him as such to eighty years at hard labor without benefit of probation, parole or suspension of sentence. *State of Louisiana v. Bacardny Wayne George*, 09-143 (La. App. 3 Cir. 10/7/2009), 19 So.3d 614, 616-617.

3

asserts that, "The swabs of the victim's blood allegedly found in my vehicle are the exact same swabs from the concrete block with the victim's blood on it." Plaintiff complains that the procedures employed by Matthews were illegal, that the victim's blood was not in plaintiff's vehicle, and that Detective Matthews was not a forensic expert qualified to testify as such at his August 13, 2008 trial.

## Law and Analysis

*Screening*

When a prisoner files suit in *forma pauperis* pursuant to 42 U.S.C. § 1983, the court is obligated to evaluate the complaint and dismiss it without service of process, if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) *citing Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *See also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). The plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Green v. Revel*, 2011 WL 165453, *1 (5th Cir. 2011) *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the United States Supreme Court determined, "[I]n order to recover damages for allegedly unconstitutional . . . imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254." A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Heck*, 512 U.S. at 487, 114 S.Ct. at 2372. The Supreme Court imposed this requirement on § 1983 plaintiffs in order to avoid collateral attacks by plaintiffs on convictions against them that are "still outstanding." *Id.* at 486, 114 S.Ct. at 2371.

Plaintiff does not contend that his attempted murder conviction, his adjudication as a second felony offender, or his 80 year sentence have been reversed, expunged, or declared invalid. Moreover, the published jurisprudence of the State of Louisiana demonstrates the contrary; plaintiff's conviction was affirmed by the Louisiana Third Circuit Court of Appeal on October 7, 2009, and it appears that plaintiff's request for post-conviction relief was denied by the Louisiana Supreme Court on November 19, 2010. *State of Louisiana v. Bacardny Wayne George*, 09-143 (La. App. 3 Cir. 10/7/2009), 19 So.3d 614; *State ex rel. George v. State*, 49 So.2d 399 (La. 11/19/2010).

Furthermore, no federal court has issued a writ of *habeas corpus*.

While plaintiff implies that he is innocent of the charges, he stands convicted, and his conviction was, in part, the result of the alleged "illegal procedures" utilized by Detective Matthews when he gathered forensic evidence during the course of his investigation.  Thus, it is clear that if this court were to grant plaintiff the damages he seeks, such ruling would necessarily implicate the validity of petitioner's conviction. Furthermore, plaintiff asks for money damages for each day that he has been wrongfully imprisoned as a result of his criminal conviction. Accordingly, plaintiff's claim is barred under *Heck*.  *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).

Moreover, because plaintiff has failed to demonstrate that his conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of *habeas corpus* prior to filing the instant civil rights action, his claim for monetary damages is  "legally frivolous" within the meaning of 28 U.S.C. § 1915. *Hamilton*, 74 F.3d at 102-103. Accordingly;

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. §  1915(e)(2)(B)(i).  Plaintiff may assert a claim if and when he can meet the *Heck v. Humphrey* conditions.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a

copy of any objections or response to the district judge at the time of filing. **Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

       **THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 17th day of March, 2011.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE